

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED
**THE DATE OF ENTRY IS ON**
**THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 9, 2017**

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ANDREW LEE FENNELL, | § | CASE NO. 17-20095-rlj13 |
| | § | |
| | § | |
| | § | |
| Debtor. | § | |

## MEMORANDUM OPINION

Before the Court is the motion of James B. Nutter & Co. seeking retroactive relief from the automatic stay and other, in rem relief. The debtor, Andrew Fennell, pro se, opposes the motion. Such relief is sought to validate a foreclosure sale by James B. Nutter that occurred five days after Fennell filed this bankruptcy case. For the reasons stated below, the Court grants the relief requested by James B. Nutter.

The Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

I.

A.

Fennell filed this chapter 13 case on March 30, 2017;[1] he submitted a chapter 13 plan on April 25, 2017 that proposed a plan base of $55,550 and monthly payments of $1,700.49 per month for the first three months, reducing to $1,068.49 per month for the remaining 57 months of the plan.[2] On May 12, 2017, Fennell filed an amended chapter 13 plan to correct an error in the original plan, namely correcting the initial plan payment amount from $1,700.49 to $700.49.[3] The trustee filed an objection to the plan, as amended, on May 30, 2017, stating that Fennell had not made any plan payments and that the plan could not be approved under § 1325(a)(6).[4] Following a hearing on June 15, 2017, the Court denied confirmation of the plan by its order entered June 20, 2017.[5] The majority of the plan payments were to be made to James B. Nutter, which holds a mortgage lien against Fennell's residence.[6]

The obligation to James B. Nutter arose from a reverse mortgage executed by Annie Lee Mills and Fairway Independent Mortgage Corporation on November 7, 2008.[7] Annie Lee Mills is Fennell's girlfriend's mother.[8] The note and deed of trust were assigned to James B. Nutter on

---

[1] Case No. 17-20095, Doc. No. 1. All "Doc." references herein are to the present case, unless otherwise noted.

[2] Doc. No. 16. In the plan, Fennell references two plan base amounts, $5,550.00 and $55,550.00. The Court concludes that the intended plan base is $55,550.00.

[3] Doc. No. 27.

[4] Doc. No. 32. "Except as provided in subsection (b), the court shall confirm a plan if . . . (6) the debtor will be able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). All section references herein refer to Title 11 of the United States Code, unless otherwise stated.

[5] Doc. No. 34.

[6] Fennell's residence is located at 609 North Jefferson, Amarillo, Texas 79107, and is the property in dispute as between Fennell and James B. Nutter.

[7] Doc. No. 38, Exs. A, B, and C to Ex. 1.

[8] Doc. No. 38.

that same day.[9] On January 30, 2014, Annie Lee Mills transferred the property, by general warranty deed, to her daughter, Cynthia Mills, and to Fennell.[10] The transfer violated the terms of the deed of trust; James B. Nutter did not approve or authorize the transfer. The transfer was recorded in the Potter County, Texas property records on May 20, 2015.[11] Annie Lee Mills passed away on March 3, 2015.[12] Pursuant to the terms of the deed of trust, James B. Nutter delivered to Cynthia Mills, and the other heirs of Annie Lee Mills, a notice of acceleration and trustee's sale.[13] The trustee's sale was scheduled for August 2, 2016, but was stayed by Cynthia Mills's July 15, 2016 chapter 13 bankruptcy petition.[14] James B. Nutter filed a proof of claim in Mills's bankruptcy; however, Mills's bankruptcy was ultimately dismissed for failure to make plan payments.[15]

Following dismissal of Ms. Mills's bankruptcy, the property was once again set for foreclosure sale on April 4, 2017.[16] To stop the foreclosure, Fennell, as a pro se debtor, filed this case. Fennell's petition listed two creditors on the "Mailing List of Creditors," neither of which was James B. Nutter.[17] For the first time, on April 25, 2017, Fennell listed James B. Nutter and

---

[9] *Id.*

[10] Doc. No. 38, Ex. D to Ex. 1.

[11] *Id.*

[12] Doc. No. 38, Ex. E to Ex. 1.

[13] Doc. No. 38, Ex. 2.

[14] Doc. No. 38.

[15] Case No. 16-20206-rlj13 Cl. No. 1-2; Doc. No. 37 (Trustee's Notice of Intent to Dismiss Ms. Mills's case); Doc. No. 41 (The Court's order dismissing Ms. Mills's case entered February 16, 2017).

[16] Doc. No. 38.

[17] Doc No. 1. Fennell likely listed the law firm, Taherzadeh PLLC, because of the previous bankruptcy wherein Mr. Taherzadeh represented James B. Nutter. Additionally, Fennell claims that a letter from Taherzadeh, PLLC is the only notice received prior to the foreclosure sale. Doc. No. 54 p. 7 (marked as Ex. 1).

3

its address on his Schedule D.[18] In doing so, Fennell bifurcated James B. Nutter's claim into a secured claim of $55,550.00 and an unsecured claim of $15,764.14.[19]

## B.

On June 29, 2017, James B. Nutter moved for retroactive relief from the automatic stay against Fennell's (and Mills's) residence.[20] James B. Nutter alleges that it did not receive notice of Fennell's bankruptcy until April 20, 2017.[21] The foreclosure sale took place, as scheduled, on April 4, 2017.[22] James B. Nutter purchased the property at the foreclosure sale; the recorded Substitute Trustee's Deed reflects this transaction.[23]

Fennell has failed to obtain confirmation of a chapter 13 plan.[24] In support of its request for retroactive relief and thus validation of the April 4 foreclosure sale, James B. Nutter relies on § 362(d)(4), asserting that Fennell was involved in a "scheme to delay, hinder, or defraud" James B. Nutter as evidenced by the multiple bankruptcy filings.[25] In addition, James B. Nutter relies on the seven-factor test of *In re Vasquez*, No. 09-47043-DML, 2010 Bankr. LEXIS 610, at *5 (Bankr. N.D. Tex. Mar. 3, 2010), which incorporates both the cause standard of § 362(d)(1) and the two-prong standard of § 362(d)(2).[26] And further, again under § 362(d)(4), James B. Nutter

---

[18] Doc. No. 12.

[19] *Id*.

[20] Doc. No. 38.

[21] *Id*.

[22] *Id.*; Doc. No. 38, Ex. 5.

[23] Doc. No. 38, Ex. 5.

[24] *See* Doc. Nos. 16, 27, 34, 45, 65, & 75. Following the Court's hearing on James B. Nutter's motion for relief from the automatic stay, Fennell's most recently submitted chapter 13 plan was denied on September 12, 2017. Doc. No. 87.

[25] Doc. No. 38.

[26] The standards under §§ 362(d)(1) and (d)(2) and the seven-factor test of *In re Vasquez* are discussed below.

seeks in rem relief concerning the property to prevent imposition of the automatic stay in subsequent bankruptcy filings by Fennell, Cynthia Mills, or any other individual with an interest in the property.[27] Fennell filed an objection to James B. Nutter's motion on July 13, 2017.[28] Fennell asserts that James B. Nutter received notice of the bankruptcy filing by the Court's electronic notification system and, further, that his filing was done in good faith "because of [an] increase in household income."[29] Hearing was held on August 15, 2017, and the matter was taken under advisement.

## II.

The Court's authority to *annul* the automatic stay is derived from § 362(d).[30] The Fifth Circuit states that acts taken in violation of the automatic stay are voidable and "capable of discretionary cure." *Sikes v. Glob. Marine, Inc.*, 881 F.2d 176, 178 (5th Cir. 1989), *accord Vasquez*, 2010 Bankr. LEXIS 610, at *5. Likewise, the power to annul the stay suggests that voidable acts can be made valid within the court's discretion. *See Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 850 (5th Cir. 1990); *cf. In re Williams*, 533 B.R. 557, 563 n.4 (Bankr.

---

[27] Doc. No. 38

[28] Doc. No. 49. The objection was later supplemented on July 20, 2017. Doc. No. 54.

[29] Doc. No. 49.

[30] (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay
    (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
    (2) with respect to a stay of an act against property under subsection (a) of this section, if
        (A) the debtor does not have equity in such property; and
        (B) such property is not necessary to an effective reorganization;
. . .
    (4) with respect to stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either
        (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
        (B) multiple bankruptcy filings affecting such real property.

N.D. Tex. 2015) (explaining an alternative analysis whereby the court considers the voidable transaction valid unless and until it is judicially declared invalid).  Such discretion, however, should be applied sparingly and relief from the automatic stay granted only in compelling circumstances.  *In re Brown*, No. 04-42064-DML, 2004 WL 5907765, at *3 (Bankr. N.D. Tex. Nov. 10, 2004) (citing *Thornburg v. Lynch (In re Thornburg)*, 277 B.R. 719, 731 (Bankr. E.D. Tex. 2002)).

Foreclosure sales that violate the automatic stay are invalid.  This is true even if the party acting in violation of the stay did not have notice of the bankruptcy, absent a grant of retroactive relief from the stay by the court.  *Bustamante v. Cueva (In re Cueva)*, 371 F.3d 232, 237 (5th Cir. 2004) (cited cases omitted).  "The stay is not a judicial injunction that depends on notice.  The stay is effective upon the filing of the case, regardless of notice."  *Brown*, 2004 WL 5907765, at *3 (quoting *Elbar Invs., Inc. v. Pierce (In re Pierce)*, 272 B.R. 198, 203 (Bankr. S.D. Tex. 2001)).  Fennell's failure to provide notice to James B. Nutter of the bankruptcy filing is not dispositive of whether the Court has authority to grant or deny retroactive relief of the stay.

The court in *Vasquez* stated as follows: "It is the view of the court that the test that should be applied in deciding whether to grant retroactive relief from the stay is whether, if relief from the stay had been sought before the action in violation of the stay was taken, the relief would have been granted."  *Vasquez*, 2010 Bankr. LEXIS 610, at *6.  As an alternative, the *Vasquez* court also considered a seven-factor test to determine if the stay should be retroactively lifted to validate a foreclosure sale.  Those seven factors include:

> (1) if the creditor had actual or constructive knowledge of the bankruptcy filing; (2) if the debtor has acted in bad faith; (3) if there was equity in the property of the estate; (4) if the property was necessary for an effective reorganization; (5) if grounds for relief from the stay existed and a motion, if filed, would have been granted prior to the violation; (6) if failure to grant retroactive relief would cause

6

> unnecessary expense to the creditor; and (7) if the creditor has detrimentally changed its position on the basis of the action taken.

*Id.* at *10 (citing *Thornburg*, 227 B.R. at 731, n.18).  Section 362(g) provides that the burden of proof regarding a motion for relief from stay under § 362(d) is a shifting one.  3 *Collier on Bankruptcy* ¶ 362.10 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2017).[31]  James B. Nutter, therefore, had the burden of proving Fennell's equity (or lack thereof) in the property, and Fennell had the burden on all other issues related to the motion.

### A.

In assessing whether retroactive relief—annulment—is proper, the Court considers whether James B. Nutter would be granted stay relief had it not foreclosed the property.  *See Vasquez*, 2010 Bankr. LEXIS 610, at *6.  Relief from the automatic stay should be granted where there is cause, including the lack of adequate protection.[32]  "'Cause' as used in § 362(d)(1) has no clear and limited definition and, therefore, is determined on a case by case basis." *In re Tex. State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995).

Relief from the automatic stay is also appropriate where the debtor lacks equity in the property *and* the property is not necessary to an effective reorganization.[33]  Property is necessary to an effective reorganization when the party opposing stay relief can prove "that the property is essential for an effective reorganization *that is in prospect*. This means . . . that there must be a reasonable possibility of a successful reorganization within a reasonable time." *United Sav.*

---

[31] (g) In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section
    (1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
    (2) the party opposing such relief has the burden of proof on all other issues.

[32] § 362(d)(1).

[33] § 362(d)(2).

*Ass'n. of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 375–76 (1988) (emphasis in original) (internal quotations omitted). "Courts usually require the debtor do more than manifest unsubstantiated hopes for a successful reorganization." *Canal Place Ltd. v. Aetna Life Ins. Co. (In re Canal Place Ltd.)*, 921 F.2d 569, 577 (5th Cir. 1991). Ultimately, if the party opposing stay relief lacks a "realistic prospect of effective reorganization," § 362(d)(2) relief is required.[34] *Timbers*, 484 U.S. at 376. Courts have adopted a list of non-exhaustive requirements necessary to satisfy the burden under § 362(d)(2)(B):

> 1. The debtor must be moving meaningfully to propose a plan; 2. The plan must provide that the lender's allowed secured claim would be valued and payable from the debtor's net . . . income generated by . . . the ability to propose a plan based on . . . sale, or other viable means; 3. The plan must have a realistic chance of confirmation; 4. Without deciding the issue with the same scrutiny as a confirmation hearing, the debtor's proposed plan must not be obviously unconfirmable; 5. The reorganization must occur in a reasonable period of time.

*Mercado v. Combined Invs. LLC (In re Mercado)*, 523 B.R. 755, 762 (B.A.P. 1st Cir. 2015). To satisfy *Timbers*, a plan that is confirmable on its face does not necessarily defeat a motion to lift stay. *See Timbers*, 484 U.S. at 376. Rather, the plan must also demonstrate feasibility, which goes beyond speculation, conjecture, and unrealistic projections of future performance. *Canal Place Ltd.*, 921 F.2d at 579.

In a chapter 13 case, proof that a piece of property is necessary to an effective reorganization is "an intense factual analysis, requiring evidence as to the debtor's intent, the anticipated integration of the property at issue in the production of future income and the nature and extent of the property involved." *In re Scott*, 121 B.R. 605, 608 (Bankr. E.D. Okla. 1990).

---

[34] While *Timbers* and the associated cases were decided in relation to chapter 11 plans, the legal concepts regarding necessity to an effective reorganization apply in chapter 13 cases as well, despite debtor rehabilitation as opposed to reorganization. *See, e.g.*, Keith M. Lundin, *Chapter 13 Bankruptcy*, 3d Ed. § 83.1 (2000 & Supp. 2004) (citing *Timbers*, 484 U.S. at 365) (collecting cases wherein relief from stay was granted because the chapter 13 debtor could not propose and confirm a plan that included the movant's collateral).

Regarding a debtor's home, some courts suggest that a home is not necessary to an effective reorganization unless the debtor proves that it "is unique or not readily fungible with other living arrangements." Lundin, *see supra* note 34, at § 83.1; *see, e.g.*, *In re Lippolis*, 228 B.R. 106, 113 (E.D. Pa. 1998) (discussing the need to determine the debtors' motive to retain the home and the availability of comparable housing); *In re White*, 216 B.R. 232, 236 (Bankr. S.D. Ohio 1997) (finding that the debtors did not meet their burden of proving that the home was not fungible). Other courts, however, hold that it is "self-evident" that a debtor's home is necessary to an effective reorganization. *See, e.g.*, *In re Parks*, 193 B.R. 361, 366 (Bankr. N.D. Ala. 1995) ("Nothing could be more related to an effective reorganization than the ability to keep and pay for their house."). The burden ultimately lies with the debtor to prove that the property is necessary to an effective reorganization.

Both the cause standard for relief of § 362(d)(1) and the two-prong standard of (d)(2) are satisfied here. This is the second bankruptcy filing concerning the property, both filed for the specific purpose of stopping James B. Nutter's foreclosure. This case was filed over seven months ago; Fennell has failed to demonstrate any ability to propose and obtain confirmation of a chapter 13 plan. The property was originally conveyed to Ms. Mills and Fennell contrary to the terms of the reverse mortgage. Though Fennell has not obtained counsel here, no doubt due to his inability to afford counsel, Ms. Mills was represented by competent counsel in her chapter 13 case, but she, too, was unable to obtain confirmation of a chapter 13 plan. Fennell failed to account for a large domestic support obligation. Given the unique circumstance of having a residence with a reverse mortgage debt that well exceeds the value of the property, both Ms. Mills and Fennell have attempted to use the chapter 13 process as a way to modify the debt by bifurcating it into a secured claim and an unsecured claim. The delays, the multiple bankruptcy

9

filings, the multiple failed plans, the defaults, the repeated efforts to write down the debt, and the original, wrongful transfer of the property have become abusive to the interests of James B. Nutter in the property.

Cause exists to warrant stay relief had James B. Nutter not already gone through a foreclosure sale. In addition, the property is not necessary to an effective reorganization. Fennell, and Ms. Mills before him, cannot make a chapter 13 plan work.

### B.

As raised by James B. Nutter, in rem relief from the automatic stay is available under § 362(d)(4). The movant must assert two things: first, that the movant is a secured creditor whose claim is secured by the property for which relief is requested; and, second, that the debtor's petition was filed as part of a scheme to delay, hinder, or defraud creditors.[35] As to the second requirement, the scheme involves either an unconsented-to transfer of all or part of the property securing the creditor's interest or multiple bankruptcy filings affecting the real property.[36] The Southern District of Texas Bankruptcy Court described the test related to § 362(d)(4) as one "that is almost wholly reliant on showing a subjective state of mind." *In re Guerrero*, 540 B.R. 270, 281 (Bankr. S.D. Tex. 2015). To grant the movant's in rem relief from stay, the court should "clearly find that a bankruptcy case was filed by the debtor with the specific forward purpose of delaying, hindering, or defrauding a creditor through the protections of bankruptcy law." *In re JCP Props., Ltd.*, 540 B.R. 596, 620 (Bankr. S.D. Tex. 2015).

The secured creditor requesting relief pursuant to § 362(d)(4) bears the initial burden of proof on the elements. *See In re Lee*, 467 B.R. 906, 920 (B.A.P. 6th Cir. 2012). As such, for

---

[35] § 362(d)(4).

[36] *Id.*

10

purposes of the case before the Court, the moving creditor must prove that Fennell (1) engaged in a scheme; (2) to delay, hinder, or defraud the creditor; and (3) the scheme involved multiple filings affecting the real property that secures the creditor's claim. *Id.* At a minimum, the alleged scheme must involve at least two bankruptcy filings. *See, e.g.*, *In re Van Eck*, 425 B.R. 54, 70 (Bankr. D. Conn. 2010) (discussing the statutory requirements of § 362(d)(4)(B)). Additionally, courts are permitted to make the inference that serial filings, the purpose of which is to stop a pending foreclosure, qualify as a scheme to delay, hinder, or defraud a creditor's rights in that property. *See In re Henderson*, 395 B.R. 893, 902 (Bankr. D.S.C. 2008) (relying also on the court's precedent that "filings by multiple parties" are construed as filings "by a single entity when done to protect a common asset"); *Carondelet Sav. & Loan Ass'n v. McKanders (In re McKanders)*, 42 B.R. 108, 109 (Bankr. N.D. Ga. 1984) (noting that the stay should be lifted when the debtor files successive chapter 13 petitions without a change in financial circumstances and the stay was lifted in a prior bankruptcy). Debtors who act unreasonably and whose cases do not present a "sufficient indicia of good faith" should not receive protection from the automatic stay, particularly when the case is motivated by successive filings to stop pending foreclosure sales. *See Williams*, 533 B.R. at 565; *Van Eck*, 425 B.R. at 71.

      This case bears some similarities to *In re Lee*. In the *Lee* case, the debtor filed three bankruptcy petitions that ultimately resulted in the court's grant of in rem stay relief against the debtor's real property. *Lee*, 467 B.R. at 910–12. The first, a chapter 13 petition, was dismissed for failure to file a plan and schedules; the second, a pro se chapter 7 petition, was dismissed for failure to produce proper documentation at the § 341 meeting; and the final petition was filed pro se under chapter 11. *Id.* at 911–12. In each instance, an action to foreclose on one of the

debtor's properties was stayed because of the bankruptcy filing. *Id*. at 912. The creditor, whose attempts to foreclose were thwarted each time, moved the court for in rem stay relief to prevent the debtor, or any other individual with an interest in the property, from listing the property or the debt in its schedules in a future bankruptcy. *Id*. at 913. The bankruptcy court concluded that the debtor was "using bankruptcy as a buffer to prevent the foreclosure proceedings from going forward," a purpose for which the bankruptcy court would not encourage or allow. *Id*. at 914. It therefore granted the creditor's motion for permanent in rem stay relief.

The Bankruptcy Appellate Panel of the Sixth Circuit upheld the court's grant of relief because it found that the debtor did participate in a scheme to hinder or delay its creditor by its serial filings. *Id*. at 920–21. The debtor's circumstances had not changed between the various bankruptcy filings. Although the debtor was hopeful she could earn more income to support a viable chapter 11 plan, the evidence demonstrated that her income remained relatively stagnant. *Id*. at 921. The bankruptcy court was correct in concluding that the debtor was a serial filer who abused the bankruptcy process, all while not making any payment to the foreclosing creditor. *Id*. Permanent in rem relief was appropriate to allow the creditor to exercise its foreclosure rights.

Arguably, Fennell's attempts, as a pro se debtor, to propose a chapter 13 plan were not made in bad faith. He has not, however, presented the Court with a confirmable plan.[37] Fennell's income has not significantly changed; Fennell wants to "make a plan work" without presenting evidence of how. Conjectures and probabilities do not meet the standard imposed by *Timbers*.[38] Though neither Fennell nor Ms. Mills have transferred an interest in the property, the property was, as noted, improperly transferred *to them* before Ms. Mills's mother died.

---

[37] Fennell filed for bankruptcy on March 30, 2017 and, as of October 12, 2017, has not put forth a plan that satisfies the requirements of §§ 1322 and 1325.

[38] *Timbers*, 484 U.S. at 376.

Fennell and Ms. Mills together are engaged in a scheme to delay or hinder their only major creditor, James B. Nutter. By his own admission, Fennell concedes that he filed his petition to stop the foreclosure. Fennell contends that the current bankruptcy was filed in good faith because of an increase in income. But there is no evidence of this increased income. According to Fennell, an increase (in the form of veterans' benefits) *should* or *could* be coming in the future. Despite these statements made at multiple hearings, Fennell has not presented a plan that satisfies the Code requirements.[39]

### III.

The Court will grant James B. Nutter's motion to annul the automatic stay, validate the foreclosure sale, and grant the requested in rem relief. Fennell and Ms. Mills filed their respective bankruptcy petitions for the purpose of delaying or hindering James B. Nutter's efforts to exercise its right to foreclose. Neither has demonstrated the ability to present a confirmable chapter 13 plan. Both were parties to an improper transfer of the property.

There is no equity in the property and it is not necessary to an effective reorganization. In fact, the debt against the property is an impediment to a feasible plan. The grant of in rem relief will not frustrate potential, future debtors in their ability to move the Court for relief from the order in a future bankruptcy.[40]

### End of Memorandum Opinion ###

---

[39] As of October 12, 2017, Fennell is in arrears $2,042.25, and confirmation of his most recently submitted amended plan is pending.

[40] The Court's order, granting in rem relief, is binding in other cases filed under Title 11 for two years following the date of entry of that order, if the order is properly recorded in compliance with applicable state law, "except that a debtor in a subsequent case under [Title 11] may move for relief from such order based upon changed circumstances or for good cause shown, after notice and a hearing." § 362(d)(4).